644 P.2d 279

**ALLEN R. KRAUSS COMPANY, an Arizona corporation, Plaintiff/Appellee,**

v.

**Lillian Love FOX, Defendant/Appellant.**

**No. 2 CA–CIV 4214.**

Court of Appeals of Arizona,
Division 2.

Feb. 24, 1982.

Rehearing Denied April 1, 1982.
Review Denied April 27, 1982.

Feldman & Mendelsohn, P. C. and J. Emery Barker, Tucson, for plaintiff/appellee.

Russo, Cox, Dickerson & Sylvester, P. C. by Karl MacOmber and Thomas P. Sylvester, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

Upon cross-motions for summary judgment, summary judgment was granted appellee (Krauss) ordering appellant (Fox) to specifically perform a land sales contract and sell the specified real estate to Krauss. The issue on appeal is whether Fox revoked her counteroffer prior to its acceptance by Krauss. We find that she did, reverse and direct that judgment be entered for Fox on her motion for summary judgment.

On May 27, 1981, through real estate agent Rick Carson of Hampton Morken, Inc., Krauss tendered a written offer to purchase Fox's land in Tucson for $265,000 cash, with Fox to pay an 8% sales commission. On May 29, through real estate agent Mike Riley of Roy H. Long Realty, Fox executed and delivered a written counter-proposal offering to sell for $486,000 cash and requiring acceptance by 6 p. m. May 30. Krauss responded by extending his original offer to 5 p. m. June 2. On June 2, Fox executed and delivered to Krauss a second counteroffer agreeing to the $265,000, but reducing the brokerage commission to 4¼% and requiring acceptance by 5 p. m. June 3. On the morning of the third, Krauss confered with real estate agent Carson and indicated that he would accept the second counteroffer. Riley was told by telephone that Krauss had accepted. The acceptance portion of the counteroffer form was signed by Krauss at 11:58 a. m. on the third. Af-

ter subsequent unsuccessful attempts to contact Riley by phone, he was contacted at approximately 3 p. m. at which time, according to Carson's deposition, Riley told Krauss that Fox "was pulling her property off the market, or she just didn't want to sell it . . . ." Krauss proceeded to deliver the executed acceptance of the second counteroffer to the designated escrow agent, Stewart Title & Trust Company, and approved the title at 4:15 p. m.

The parties agree with the facts as stated, but disagree with the legal implications. Krauss' position is that the following language in the second counteroffer required that it remain open for the time specified.

"This Counter Offer shall remain in full force and effect until 5:00 (p. m.) June 3, 1981. (I)(we) hereby agree to allow the purchasers until the time noted above to accept this Counter Offer, and we agree not to accept any other proposals to purchase in the interim. After the time noted above (I)(we) will be free to accept any and all offers on said property from other parties."

He contends that the counteroffer was an option and, as such, binding upon Fox during the option period.

An option constitutes a continuing offer, *Hopkins v. Barlin*, 31 Wash.2d 260, 196 P.2d 347 (1948), and may be based upon good or valuable consideration, *Mack v. Coker*, 22 Ariz.App. 105, 523 P.2d 1342 (1974). The difficulty with Krauss' position arises on the question of the consideration that he argues supports the option—the $5,000 earnest money tendered with his initial deposit receipt and agreement. It is clear from the agreement that the earnest money was consideration for that agreement, as a good faith tender of part of the purchase price subject to forfeiture in the event of the purchaser's default. No provision mentions that any portion of the deposit was to serve as consideration to transform possible counteroffers into options. Such a mischievous proposition is untenable, as is the suggestion that the writings import sufficient consideration to parlay the counteroffer into an option. While it is true that Arizona adheres to the rule that a contract in writing imports a consideration

(subject to the defense of lack or failure of the consideration), A.R.S. § 44–121, the writing here was not a *contract*; it was merely a *counteroffer*.

Because the counteroffer was not given for consideration and even though it was specified for a definite period, it could be revoked at any time before acceptance. See *Butler v. Wehrley*, 5 Ariz.App. 228, 425 P.2d 130 (1967) (where revocation was not validly communicated and was therefore ineffective); 1 Williston on Contracts, § 55, Revocation (3rd ed. 1957). The written counteroffer was orally revoked at 3:00, which was before acceptance, by delivery of the executed acceptance to the escrow agent at 4:15 p. m. Therefore, no contract was created. Restatement (Second) Contracts, § 36.

Reversed and remanded with directions that judgment be entered on Fox's motion for summary judgment.

HOWARD, C. J., and BIRDSALL, J., concur.